Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.234.5260
Fax: 415.373.9495

*Attorneys for Plaintiff Holt and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHRISTINE HOLT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation,<br><br>*Defendant* | CASE NO. 16-CV-2266<br><br>**COMPLAINT FOR:**<br>1. **Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227;**<br>2. **Violations of Cal. Bus. & Prof. Code §§ 17200,** *et seq*.<br><br>**CLASS ACTION**<br>**JURY TRIAL DEMANDED** |

Plaintiff Christine Holt ("Holt") brings this Class Action Complaint and Demand for Jury Trial against Defendant Facebook, Inc. ("Facebook") to stop its practice of sending unsolicited text messages to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for her complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. Defendant Facebook owns and operates four of the top six social networks in the world, including its flagship social network—www.facebook.com.[1]

2. Facebook relies almost exclusively on advertising services to generate revenue through its assortment of social media networks. In order to capitalize on these advertisements, Facebook collects and stores an array of user data, including the websites its users visit, the articles its users read, and its users' cellular telephone numbers.

3. Facebook then uses much of this information to deliver targeted ads to its user base. But Facebook also goes one step further and uses its members' cellular telephone information to send numerous unsolicited text messages to thousands of cellular telephone numbers, without the consent of the recipients. Defendant sends these text messages using an automatic telephone dialing system that has the capacity to store and dial telephone numbers, *en masse*. Because these text messages were sent without the prior express consent of the text recipients, Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4. The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint—autodialed solicitations to cellular phone numbers, placed without each consumer's prior express consent.

5. Defendant's violations caused Plaintiff and the members of the putative Classes of consumers (defined below) to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages.

6. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit, seeking an injunction requiring Defendant to cease all unsolicited text messaging, prevent similar conduct by Defendant in the future, as well as an award of statutory damages to the members of the putative Classes under the TCPA, together with costs and reasonable attorneys' fees.

---

[1] Matt Kapko, *15 Social networks with the most active users in 2015*, CIO (Dec. 11, 2015, 5:00AM), http://www.cio.com/article/3014362/social-networking/15-social-networks-with-the-most-active-users-in-2015.html (last visited April 26, 2016).

## PARTIES

7. Plaintiff Christine Holt is a natural person domiciled in the District of Columbia.

8. Defendant Facebook is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1601 Willow Road, Menlo Park, California 94025. Defendant Facebook regularly does business throughout the State of California and in this District.

## JURISDICTION

9. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

10. The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Defendant resides in this District, transacts significant business within this District. Furthermore, the conduct and events giving rise to Plaintiff's claims—including the development, execution, and approval of Facebook's marketing and advertising strategies and campaigns that led to the mass text messaging campaign at issue—occurred in and/or emanated from the State of California generally, and this District in particular.

## INTRADISTRICT ASSIGNMENT

11. Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

## COMMON FACTUAL ALLEGATIONS

*Facebook's Business Model*

12. Facebook is a global social network that enables people to connect, share, discover, and communicate with each other via their mobile devices and personal computers. Since its founding in 2004, Facebook has accumulated more than 1.5 *billion* users.

13. Each of these more than 1.5 billion users accesses Facebook for free. Facebook doesn't charge its users for access or use of its services and even boasts that Facebook "I[s] free and

always will be."[2] Instead of charging its user base for access, Facebook capitalizes on them by collecting their valuable personal information, including their geolocations, browsing histories and patterns, education, interests, and telephone numbers.

14. By expanding its user base and promoting user interaction, Facebook is able to expose more people to advertising—thereby increasing its own revenues.

15. Thus, any invitation to join, post a message to, or interact with Facebook is ultimately meant to promote the service and entice users to take an action that will result in a financial benefit to Facebook.

16. In order to increase consumer exposure to the advertisements hosted on Facebook, it relies on—and exploits—the massive database of consumer information that it collects from its users.

*Facebook's Unsolicited Text Messages*

17. Facebook exploits its vast cache of personal information through the tried and true method of mobile marketing. Specifically, Facebook sends automated text messages to the cellular telephone numbers it collects from its users' accounts.

18. However, Facebook fails to update its databases to account for circumstances where its users have deactivated or relinquished the phone number that they previously provided to the social media service.

19. Cellular telephone subscribers deactivate and relinquish their cellular telephone numbers for any number of reasons. Once deactivated, the cellular telephone carrier reassigns the number to another subscriber—a practice known as "recycling." Recycling times (*i.e.*, the time between deactivation and reassignment) vary across carriers, generally ranging from thirty days to six months depending on location and demand. During the recycling period, the cellular telephone number is considered disconnected.

20. Relevant here, when a Facebook user deactivates their phone number, and the number eventually gets reassigned to a new consumer—Facebook keeps sending multiple

---

[2] *See* Facebook, https://www.facebook.com/ (last visited April 26, 2016).

automated text messages to the same number, and its new owner, without the new owner's consent.

21. In some instances (but not all), the prior owner of a recycled telephone number may have provided Facebook with their telephone number, or even consented to receiving text messages from Facebook. However, regardless of any consent provided by the prior owner, that consent cannot be transferred to the new owner. Ultimately, new owners of recycled cellular telephone numbers are given no choice in receiving (and paying for) Facebook's unsolicited text messages.

22. The mobile marketing industry is acutely aware of cellular telephone number recycling and, in particular, the risk associated with sending text messages to non-consenting recycled numbers. For example, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. In its October 2012 U.S. Consumer Best Practices for Messaging, the MMA recommends that mobile marketers, like Facebook,

> …have appropriate and effective systems and processes for managing deactivation and recycled number information. These systems and processes should be designed to ensure that mobile content programs subscribed to by previous holders of a specific phone number do not continue to be delivered or billed to a subsequent holder of that number when it is reassigned.

The MMA further advises mobile marketers to "process deactivation information within three business days of receipt."[3]

23. Moreover, numerous commercially available services exist to help mobile marketers, such as Facebook, identify and exclude recycled numbers and non-consenting cellular subscribers from their texting campaigns. These services identify disconnected numbers before they are recycled and alert mobile marketers that any consent associated with those telephone numbers in the past had been terminated.

24. Despite these industry guidelines and practices, and other available resources

---

[3] The MMA is a global trade organization that issues codes of conduct, best practices, guidelines, rules and instructions for companies engaged in mobile marketing. Its U.S. Consumer Best Practices for Messaging are based on accepted industry practices, common wireless carrier policies and regulatory guidance. *See U.S. Consumer Best Practices for Messaging*, Mobile Marketing Association (Oct. 16, 2012), *available at* http://www.ctia.org/docs/default-source/default-document-library/industry-best-practices.pdf?sfvrsn=0 (last visited April 26, 2016).

available to it, Facebook failed (and continues to fail) to take the necessary steps to ensure that its automated text messages are sent only to consenting recipients.

25. To that end, Facebook simply treats the new recycled cellular telephone number owner as if he or she were the previous owner. If the previous owner gave consent to receive Facebook's text messages, Facebook continues to treat that consent as valid. Facebook then sends multiple text messages to the new owner's cellular telephone without their consent. New owners are then forced to incur the cost and invasion of privacy of receiving Facebook's unauthorized text messages.

26. Notably, new owners are not provided any explicit means to contact Facebook to make the messages stop. In some instances, the messages do not even identify "Facebook" as the sender, and some consumers—having no prior relationship with Facebook—may be completely unaware that Facebook is the sender.

27. If the telephone number is associated with its previous owner's online Facebook account, the new cellular subscriber has no way of accessing that account (belonging to the previous owner) to opt out of receiving Facebook's text messages. And, worse yet, Facebook often ignores direct demands from the text recipients that the text messages stop.

28. Ignoring consumer demands that the texts cease is particularly easy for Facebook because it makes it notoriously difficult for consumers to opt-out of or unsubscribe from its texting campaigns.

29. In fact, Facebook fails to provide *any* information or instruction in its text messages informing the recipients how to make the text messages stop.

30. Because consumers are not provided sufficient information to make Facebook's text messages cease, they often reply with repeated—and ignored—demands that Facebook stop sending the unlawful messages.

31. Any stop request sent by a consumer is, by design, sent to Facebook's short code 32665, directly informing Facebook (as intended) that any subsequent messages are unauthorized.

32. The internet is replete with consumer complaints arising from Facebook's texting

campaign originating from the "32665" number. (*See* Figures 1–5.)

> **bv**
> 19 May 2013
>
> never even considered face book, and now I never will. How did they get my number? And responding "OFF" like someone mentioned seems to have just confirmed my phone number for them. evil big brother crap!
>
> Caller: facebook the evil scourge
> Call Type: SMS
>
> Reply   !

(Figure 1.)[4]

> **Old girl**
> 22 Sep 2013 | 3 replies
>
> Keep getting unwanted texts from this number. At least 6 a day. Just received 10 texts one after the other. Also had one at 23.52 last night! Total nuisance and invasion of privacy. Appears to be from Facebook saying, "Confirmed! To turn off important notifications from friends, reply stop. Reply help for other options. SMS charges may apply." I have already turned off notifications so don't understand the purpose of these texts. Reluctant to reply stop in case charged.
>
> Reply   !

(Figure 2.)

> **facebook worst nightmare**
> 15 Mar 2013 | 2 replies
>
> I got a comfimation code from fu%/ed book on ny phone & i dont even have a fb account can anyone explain how what & why is this going on concidering this is a new sim&number and i havent even had a chance to give this new number out to my real life freinds i hate this confusing spy tek age we live in death to facebook we should all come together and woek out a effective way to distroy it evil exsistance
>
> Caller: facebook
> Call Type: SMS
>
> Reply   !

(Figure 3.)

> **Anonymous**                        Report as inappropriate | Reply to | Rate Comment ▲ 0 ▼
> Mar 26, 2015 06:34 AM
>
> I do not have a Facebook account and this is a Facebook number

---

[4]   Figures 1–3 are just a few examples of the hundreds of consumer complaints regarding Facebook's conduct available on a single website. *See* http://whocallsme.com/Phone-Number.aspx/32665 (last visited April 26, 2016). Likewise, Figures 4–5 are representative of a sampling of the numerous complaints available at another website. *See* https://www.everycaller.com/phone-number/3-2665/ (last visited April 26, 2016).

CLASS ACTION COMPLAINT                              7                              CASE NO. 16-CV-2266

1  (Figure 4.)

> **Helen**  Report as inappropriate | Reply to | Rate Comment ▲ 0 ▼
> Oct 14, 2014 12:00 AM
>
> NOT from facebook. I got this text and I dont even have Facebook. 100% SCAM.
>
> **Caller:** 32665

(Figure 5.)

33. Each of the text messages sent by Facebook was made with equipment having the capacity to store or produce telephone numbers, and to dial such numbers, *en masse*, without any need for human intervention. Furthermore, these campaigns were not executed with the prior express consent of the text recipients in violation of the TCPA.

34. Despite knowing that its text messages violate the TCPA, Defendant continues to send thousands of text messages to recycled numbers without the text recipients' consent. Facebook's ongoing text messaging is hardly surprising given that each text message sent by Facebook has the potential to directly increase its advertising revenues.

35. The TCPA was enacted to give consumers control over how and where they receive calls and text messages. When Facebook's text messages are sent to consumers without their consent, it fails to address or respect the limitations imposed by the TCPA, thereby taking control away from consumers and violating the spirit and letter of the TCPA.

**FACTS SPECIFIC TO PLAINTIFF CHRISTINE HOLT**

36. Plaintiff Christine Holt is the subscriber to and primary user of her personal cellular telephone number.

37. In or around March 2016, Plaintiff obtained a new cellular telephone number from MetroPCS. Almost immediately after obtaining her new cellular phone number, Plaintiff began receiving impersonal, promotional text messages. The messages were identified cryptically from "32665" and "32665025" which Plaintiff later learned were short codes owned and/or operated by Facebook.

38. Beginning in March of 2016 and continuing through April 2016, Plaintiff Holt received multiple text messages from 32665025, asking her to post status updates to Facebook. For example, on April 17, 2016, Plaintiff received the following unsolicited text messages:



(Figure 6.)

39. The website "http://fb.com," in turn, redirects visitors to www.facebook.com. On or about April 13, 2016, Plaintiff replied to Defendant's text messages with multiple written demands that Facebook stop texting her—but Defendant disregarded these demands and continued to send unsolicited text messages to Plaintiff, including as recently as April 20, 2016.

40. Plaintiff is not a www.facebook.com user and never provided her prior express consent for Facebook to contact her. She did not express an interest in receiving information about Facebook to any person or entity, including Defendant.

41. Plaintiff did not provide her phone number to Defendant or any third party operating on its behalf, let alone provide her consent to receive text message calls from, or on the behalf of, Facebook.

42. Defendant, or others acting on its behalf, sent these text messages to Plaintiff and thousands of members of the putative Classes using equipment that has the capacity to store or produce telephone numbers to be called and to dial such numbers, *en masse*, simultaneously and without human intervention.

43. As such, Defendant not only failed to obtain Plaintiff's consent when it began barraging her cellular telephone number with text messages, but it was also expressly informed that she did not consent to the text messages through her demands that they stop. Thus, it was clear that any consent it could have had (it didn't have any) was revoked. Despite her efforts, the harassing text messages continued.

44. As a result of Facebook's conduct, Plaintiff lost money or property in the form of consumed battery life and diminished use, enjoyment, and utility of her cellular telephone and cellular telephone plan.

## CLASS ALLEGATIONS

45. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and two Classes of similarly situated individuals, defined as follows:

> **No Consent Class**: All persons in the United States who: (1) received a text message call initiated by Defendant; (2) at his or her cellular telephone number; and (3) for which Defendant did not have any current record of prior express consent from him or her to place such text message calls at the time the text message calls were placed.
>
> **Stop Text Class**: All persons in the United States who: (1) received a text message call initiated by Defendant; (2) at his or her cellular telephone number; (3) *after* making an express request to Facebook for the text messages to cease, other than a final one-time confirmation text message confirming the recipient's desire to not receive such messages.

46. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

47. **Numerosity**: The exact size of each Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent text messages to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be identified through Defendant's records.

48. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

49. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

50. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

**No Consent Class**:

(a) Whether Defendant's text messages were sent to consumers' cellular telephones utilizing an automatic telephone dialing system;

(b) Whether Defendant maintains records of prior express consent to place the text messages it sent to consumers;

(c) Whether Defendant's conduct violated the TCPA; and

(d) Whether Plaintiff and the members of the No Consent Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct.

1         **Stop Text Class**:

2         (a)    Whether Defendant's text messages were sent to consumers' cellular telephones utilizing an automatic telephone dialing system;

        (b)    Whether Defendant continued to send messages to the Stop Text Class's cellular telephones after receiving a request that the text messages cease;

        (c)    Whether Defendant's conduct violated the TCPA;

        (d)    Whether Plaintiff and the members of the Stop Text Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct.

51.   **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**FIRST COUNT**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the No Consent Class)**

37.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38.   Defendant and/or its agents sent unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the members of the No Consent Class without their prior express consent.

39. Defendant sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, *en masse*.

40. These text messages were sent to Plaintiff and other members of the No Consent Class simultaneously and without human intervention.

41. By sending or having these unsolicited text messages sent to Plaintiff and the No Consent Class, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's unlawful conduct, the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

42. Should the Court determine that Defendant's conduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

**SECOND COUNT**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Stop Text Class)**

43. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44. Defendant and/or its agents sent unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Stop Text Class after Plaintiff and the members of the Class had communicated to Defendant that they no longer wished to receive text messages from Defendant.

45. As such, Facebook did not have the required prior express consent of the text message recipients at the time the text messages in question were sent.

46. Defendant sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, *en masse*.

47. These text messages were sent to Plaintiff and other members of the Stop Text Class

simultaneously and without human intervention.

48. By having these unsolicited text messages sent to Plaintiff and the Stop Text Class, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's unlawful conduct, the members of the Stop Text Class suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular phones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

49. Should the Court determine that Defendant's conduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Text Class.

**THIRD COUNT**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq*.**
**(On Behalf of Plaintiff and the Classes)**

50. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51. California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of these three criteria to be considered unfair competition.

52. As described herein, Facebook has engaged in unfair and unlawful business practices as defined by the UCL by sending, or having sent on its behalf, text messages to cellular telephone numbers utilizing an automated telephone dialing system without the prior express consent of the called parties, or by having such text messages sent to cellular telephone numbers after receiving demands that it cease sending such text messages, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

53. Defendant knew that it used automated telephone dialing equipment to send text messages to cellular telephone numbers belonging to Plaintiff and the members of the Classes.

54. Defendant violated the UCL's unfair prong and caused substantial injury to consumers by knowingly accessing their cellular telephone equipment without consent, thereby consuming battery life and diminishing their use, enjoyment, and utility of their cellular telephones and cellular telephone plans. The injuries caused by Defendant's unfair conduct are not outweighed

by any countervailing benefits to consumers or competition, and the injuries are such that consumers themselves could not have reasonably avoided them.

55. Defendant has also violated the UCL's unlawful prong by violating the TCPA, as described above.

56. Defendant's unlawful and unfair conduct occurred during attempts to induce consumer use of, and participation in, its social media network in order to generate advertising revenues for itself, and therefore occurred in the course of Defendant's business practices.

57. Defendant's unfair and unlawful conduct directly and proximately caused Plaintiff and members of the Classes a loss of money or property in the form of the wear and tear on their cellular telephone equipment, consumed battery life, and the diminishment in the use, enjoyment, value, and utility of their cellular telephone plans.

58. Facebook's critical decisions related to the text messaging campaign at issue were coordinated in, occurred in and emanated from its headquarters in California.

59. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein; (2) requiring Defendant to restore to Plaintiff and each member of the Classes any money acquired by means of unfair and/or unlawful competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christine Holt, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Christine Holt as the representative of the Classes, and appointing her counsel as Class Counsel;

B. An award of actual and statutory damages;

C. An order declaring that Defendant's actions, as set out above, violate the TCPA;

D. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E. An order declaring that Defendant's actions, as set out above, violate the UCL;

F. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

G. An order requiring Defendant to pay restitution for the money and property lost as a result of its unlawful telephone calling practices;

H. An order requiring Defendant to identify any third party involved in the text messaging activities as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

I. An injunction requiring Defendant to cease all unsolicited text message activities and otherwise protecting the interests of the Classes;

J. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining and maintaining records of call recipients' prior express consent to receive calls made with such equipment;

K. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

L. An award of reasonable attorneys' fees and costs; and

M. Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: April 26, 2016

**CHRISTINE HOLT**, individually and on behalf of all others similarly situated,

By: /s/ Todd Logan
      One of Plaintiff's Attorneys

Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.234.5260
Fax: 415.373.9495